UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CR. 13-50035 |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | DEFENDANT'S FIRST MOTION |
| | ) | FOR RECONSIDERATION |
| JON CRAIG DILLON, | ) | OF PRETRIAL RELEASE |
| a/k/a JC Dillon, | ) | [DOCKET 14] |
| a/k/a JON CRAIG GOINGS, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Jon Craig Dillon is before the court on an indictment charging him with one count of assault with a dangerous weapon, and 4 counts of assault resulting in serious bodily injury, all allegedly involving the same female victim on March 10, 2012; May 19, 2012; July 3, 2012; and July 14, 2012. Mr. Dillon now moves the court to release him from custody so that he may reside at his residence in Rapid City. See Docket No. 14. A hearing on this matter was held on Tuesday, March 26, 2013, at which the government presented evidence and both parties presented argument.

Under the Bail Reform Act, 18 U.S.C. § 3142(j) and under the United States Constitution, Mr. Dillon is presumed innocent of the charges he is now facing. However, the court also takes note of the fact that a grand jury, acting independently of the government, has received evidence in this matter and has

found probable cause to believe that Mr. Dillon has committed the five charges contained in the indictment.

Under subsection (g) of the Bail Reform Act, the court is directed to take into account the following factors in weighing whether to release Mr. Dillon on bond and, if so, what conditions to impose:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .;
>
> (2) the weight of evidence against the person;
>
> (3) the history and characteristics of the person, including–
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.
> . . .

See 18 U.S.C. § 3142(g).

The facts considered by the court in reaching its decision on Mr. Dillon's request for bond are as follows. In 2010, Mr. Dillon was convicted of aggravated eluding in an incident in which he fled from a Rapid City Police Officer attempting to conduct a traffic stop. Mr. Dillon reached speeds of up to 109 miles per hour within the city limits of Rapid City during this incident. He

ultimately was apprehended in Rushville, Nebraska, after leading a variety of law enforcement officers on a chase across rural South Dakota, the Pine Ridge Indian Reservation, and across the state line into Nebraska. Mr. Dillon was convicted in South Dakota state court of a felony offense for this eluding and was sentenced to two years probation, with a two-year penitentiary sentence suspended.

The current charges Mr. Dillon is facing are alleged to have occurred while Mr. Dillon was on state probation for the eluding charge. The evidence adduced at the hearing was that the injuries sustained by the alleged victim in the March, 2012, alleged assaults were serious enough to prompt the alleged victim to seek medical treatment three times at the Indian Health Service Hospital in Pine Ridge, and eventually at the Rapid City Regional

Hospital.[1]  Photographs were introduced into evidence showing bruising on the victim's face, including two black eyes, and bruising on her abdomen and lower back where it is alleged that Mr. Dillon kicked her with shod feet while she was on the ground.  The government alleges that the assault caused acute kidney injury to the alleged victim.

In April, 2012, Oglala Sioux Tribe officers arrested Mr. Dillon for possession of methamphetamine, although there was apparently no conviction for that charge in tribal court.  The tribal arrest, however, triggered a revocation of probation proceeding in state court on April 26, 2012.  While that

---

[1] Mr. Dillon's counsel objected to the government's Exhibit 3, a one-page record from the alleged victim's treatment at Rapid City Regional Hospital.  The objection was based on the defendant's Due Process right to confront and cross-examine the author of the medical record as discussed in United States v. Johnson, No. 12-2438 (8th Cir. Mar. 25, 2013).  The court admitted Exhibit 3, holding that Johnson was distinguishable.  First, the defendant's right to cross-examine in Johnson stemmed from Fed. R. Crim. P. 32.1, a rule specifically applicable to revocation proceedings and inapplicable to bond hearings.  Second, in Johnson, the police report was admitted as true hearsay–to prove that the defendant had committed the crime described in the report.  Here, the court accepted Exhibit 3 as evidence that the alleged victim suffered serious injury, but not for the purpose of proving that the defendant caused that injury.  Third, in Johnson, the police officer was not called as a witness and the government offered no explanation for why the officer could not conveniently have been called.  Here, the police officer who investigated the crimes alleged in the indictment did testify and the reason the alleged victim was not called as a witness was because, the court infers, she is hostile to the government, a circumstance admitted by Mr. Dillon's counsel.  Finally, the police report in Johnson was not inherently reliable as evidence that the defendant had committed the crime described therein.  Here, the medical record describing the alleged victim's injury is inherently reliable for the purpose of describing the injury.  For all these reasons, the court finds Johnson to be distinguishable and the court admitted Exhibit 3 into evidence.

revocation proceeding was pending, Mr. Dillon is alleged to have committed the July, 2012, assaults detailed in the indictment in this case.

Mr. Dillon's state court probation and suspended imposition of sentence were revoked on September 18, 2012, and he was sentenced to two years in the state penitentiary with credit for time served. He was paroled on December 5, 2012, and resided in a half-way house until shortly before the indictment was filed in this case on March 19, 2013. The alleged victim has resumed a romantic relationship with Mr. Dillon following his release from prison. She is now in her first trimester of a pregnancy occasioned by Mr. Dillon and is adverse to the government's prosecution herein.

At the time of his arrest in this matter, Mr. Dillon did have a job and an apartment, though both were of extremely short duration as indicated by the above recitation of events. He has only just been released from the state penitentiary.

Upon consideration of all the above facts, the court finds that Mr. Dillon is both a flight risk and a danger to the community, including the alleged victim in this case. The court finds that Mr. Dillon's conviction for aggravated eluding demonstrates the risk of flight. This was not a temporary attempt to avoid arrest nor a moment of inattention to a law enforcement officer's siren and lights. Rather, it was a sustained and dangerous incident that would have lasted, of necessity given the distance traveled, some hours.

The court also finds that Mr. Dillon poses a risk to the alleged victim, to the unborn child currently in the alleged victim's womb, and to the community. The court ascribes particular importance to the fact that Mr. Dillon was on probation with the state authorities when he allegedly committed the first assault on the alleged victim. He was then arrested by tribal authorities on drug charges, and then arrested by state authorities in connection with the revocation proceedings. Even with the advent of these prosecutions, Mr. Dillon is alleged to have committed two more assaults on the alleged victim in July, 2012. If it is true that Mr. Dillon committed the July assaults–a fact that remains to be proved by the government beyond a reasonable doubt–this bespeaks an inability on Mr. Dillon's part to control his conduct and a disregard for judicial authority and orders. I.e., at a time when it was in Mr. Dillon's own best interests to be law-abiding so as to present the best face possible to the state court judge on his probation revocation proceedings, he instead is alleged to have perpetrated two very violent assaults.

The court also takes into account the fact that the victim cannot be relied upon to take measures to protect herself from Mr. Dillon. At the time of his arrest in this case, she was cohabiting with Mr. Dillon and carries his child. At the initial appearance of Mr. Dillon in this court on the indictment, the alleged victim fled from the courtroom in tears decrying the unfairness of the prosecution against Mr. Dillon. Although the court could order Mr. Dillon to

have no contact with the alleged victim if Mr. Dillon were released on bond, this restriction would be unavailing as neither Mr. Dillon nor the alleged victim would have the incentive to obey the restriction. Therefore, upon consideration of the evidence and arguments presented at the hearing by both parties, and the court's findings above, the court hereby

ORDERS that Mr. Dillon's motion for release from custody [Docket No. 14], is denied.

Dated March 26, 2013.

BY THE COURT:

/s/ *Veronica L. Duffy*
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE